IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TROY DON WHITED, | |
| Plaintiff, | 4:12-CV-3158 |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on the denial, initially and upon reconsideration, of plaintiff Troy Don Whited's disability insurance benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq*. The Court has carefully considered the parties' filings and the administrative record. For the reasons discussed below, the Commissioner's decision will be affirmed.

BACKGROUND

This case involves two applications made under the SSA. In July 2009, Whited applied for disability insurance benefits under Title II (T8, 120–29), and for supplemental security income benefits under Title XVI. T8, 130–32. Both claims were denied initially and on reconsideration. T54–65. Following a hearing on December 8, 2010, the administrative law judge (ALJ) found that Whited was not disabled as defined under 42 U.S.C. §§ 416(i), 423(d), or 1382c(a)(3)(A), and therefore not entitled to benefits under the SSA. T7–20.

To determine whether a claimant is entitled to disability benefits, the ALJ performs a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). At step one, the claimant has the burden to establish that he has not engaged in substantial gainful activity since his alleged disability onset date. *Id.*; *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006). If the claimant has engaged in substantial gainful activity, he will be found not to be disabled; otherwise, at step two, he has the burden to prove he has a medically determinable physical or mental impairment or combination of impairments that significantly limits his physical or mental ability to perform basic work activities. *Id.* At step three, if the claimant shows that his impairment meets

or equals a presumptively disabling impairment listed in the regulations, he is automatically found disabled and is entitled to benefits. *Id.* Otherwise, the analysis proceeds to step four, but first, the ALJ must determine the claimant's residual functional capacity (RFC), which is used at steps four and five. § 404.1520(a)(4). At step four, the claimant has the burden to prove he lacks the RFC to perform his past relevant work. *Gonzales,* 465 F.3d at 894. If the claimant can still do his past relevant work, he will be found not to be disabled; otherwise, at step five, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and work experience, that there are other jobs in the national economy the claimant can perform. *Id.*

In this case, at step one, the ALJ found that Whited had not engaged in substantial gainful activity since his alleged disability onset date of October 12, 2007. T10. At step two, the ALJ found that Whited had the following severe impairments: lumbar stenosis at the L4/L5 level,[1] degenerative disc disease, lower extremity radiculopathy,[2] and obesity. T10. But at step three, the ALJ found that Whited did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment. T10–11.

The ALJ found that Whited had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with several other postural and environmental limitations not at issue on appeal. T11. At step four, the ALJ found that Whited was unable to perform his past relevant work. T14. And at step five, the ALJ found that Whited could perform jobs that existed in significant numbers in the national economy, based on the testimony of vocational expert Jeffrey F. Magrowski, Ph.D. The ALJ provided the representative jobs of livestock sales representative, usher, and furniture rental consultant. T14–15. So, the ALJ found that Whited was not disabled. T15–16.

On June 5, 2012, after reviewing additional evidence, the Appeals Council of the Social Security Administration denied Whited's request for review. T1–4. Whited's complaint seeks review of the ALJ's decision as the final decision of the Commissioner under sentence four of 42 U.S.C. § 405(g). *See also* § 1383(c)(3). Filing 1.

---

[1] Lumbar spinal stenosis refers to a narrowing of the spinal canal caused by degenerative or traumatic changes at the level of the lumbar vertebrae. *Taber's Cyclopedic Medical Dictionary s.v.* "Stenosis, lumbar spinal stenosis" (LexisNexis 2011).

[2] Radiculopathy refers to a disorder of the spinal nerve roots. *Stedman's Medical Dictionary* 1503 (27th ed. 2000).

ANALYSIS

The Court reviews a denial of benefits by the Commissioner to determine whether the denial is supported by substantial evidence on the record as a whole. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011) (citing 42 U.S.C. § 405(g)). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion. *Id*. The Court must consider evidence that both supports and detracts from the ALJ's decision, and will not reverse an administrative decision simply because some evidence may support the opposite conclusion. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). If, after reviewing the record, the Court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the Court must affirm the ALJ's decision. *Id*. The Court reviews for substance over form: an arguable deficiency in opinion-writing technique does not require the Court to set aside an administrative finding when that deficiency had no bearing on the outcome. *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011). And the Court defers to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011).

### I. Effect of Whited's Obesity on His RFC

Whited first contends that the ALJ erred by failing to identify the impact of his obesity on his RFC. This argument, which Whited has raised in only the most cursory fashion, is without merit. After finding that Whited's obesity was a severe impairment at step two, the ALJ explicitly considered Whited's obesity in making her RFC determination. T12. The ALJ stated that she had considered the effects of Whited's obesity alone and combined with his other impairments, in accordance with Social Security Ruling (SSR) 02–1p: *Policy Interpretation Ruling: Titles II And XVI: Evaluation of Obesity* (2002). Whited has failed to identify any additional or greater limitations resulting from his obesity, and the Court has no reason to believe that the ALJ erred in her determination. *See*, *Heino v. Astrue*, 578 F.3d 873, 881–82 (8th Cir. 2009); *Forte v. Barnhart*, 377 F.3d 892, 896–97 (8th Cir. 2004).

### II. Existence of Sufficient Numbers of Jobs in the National Economy

Whited next takes issue with the ALJ's finding at step five that he could perform jobs that existed in significant numbers in the national economy. As noted above, the ALJ utilized the testimony of a vocational expert (VE), Jeffrey F. Magrowski, Ph.D. T14–15, 39–45. At the hearing, Magrowski testified that, based on the job descriptions found in the

Dictionary of Occupational Titles (DOT),[3] a person with Whited's RFC could perform the representative jobs of livestock sales representative, usher, and furniture rental consultant. T39–45. The ALJ accepted this testimony and found that Whited could perform these jobs, and that they existed in significant numbers in the national economy. T14–15.

Whited has raised objections to both aspects of the ALJ's findings—his ability to perform these jobs, and the existence of these jobs in sufficient numbers. He first argues that the actual duties performed by livestock sales representatives and furniture rental consultants are more strenuous than suggested by the definitions in the DOT and the VE's testimony. Whited claims that as actually performed, these positions would require him to complete physical tasks in excess of the ALJ's RFC determination.

According to the DOT, both positions are classified as "light" work.[4] DOT §§ 260.257-010, 295.357-018. The DOT states that the livestock job involves, among other duties, contacting prospective buyers to persuade them to purchase livestock, inspecting livestock, and attending meetings to keep informed of trends and developments in the livestock industry. DOT § 260.257-010. Whited asserts that the position would actually involve loading and unloading livestock, and penning and feeding livestock, and would therefore exceed his RFC. Similarly, while the DOT description for the position of furniture rental consultant does not include any significant physical duties, Whited claims that the position would actually require him to move furniture. DOT § 295.357-018.

However, Whited has failed to support his claims with any evidence that would contradict the DOT descriptions. The ALJ may take notice of the physical demands and strength ratings of jobs found in the DOT. *See* 20 C.F.R. § 404.1566(d)(1); *see also*, *Porch v. Chater*, 115 F.3d 567, 571 (8th Cir. 1997); *SSR 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions* (2000). The DOT creates a rebuttable presumption as to a job's classification. *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008); *see also Young v. Apfel*, 221 F.3d 1065, 1070 (8th Cir. 2000). This presumption can be rebutted by the testimony of a VE, *Jones v. Astrue*, 619 F.3d 963, 978 (8th Cir. 2010), but it cannot be rebutted by unsupported

---

[3] U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991) (available at: http://www.oalj.dol.gov/LIBDOT.HTM) (last accessed July 25, 2013).

[4] The DOT defines "light" work similarly to the Social Security Administration's definition. *Compare* DOT App'x C (available at: http://www.oalj.dol.gov/public/dot/references/dotappc.htm) (last accessed July 25, 2013), *with* 20 C.F.R. § 404.1567(b). Whited has not identified any material difference between these definitions.

conclusions in Whited's brief. The ALJ properly relied upon the testimony of the VE, which was consistent with the DOT, and Whited has not shown any error in this regard.[5]

Whited next argues that the ALJ erred in finding that these jobs existed sufficient jobs in the national economy. As noted above, at step five, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and work experience, that there are other jobs in the national economy that the claimant can perform. *Gonzales,* 465 F.3d at 894; §§ 404.1520(a)(4)(v); 404.1560(c). The ALJ found, based on the VE's testimony, that there were 500 usher positions in Nebraska and 30,000 nationally, 200 furniture rental consultant positions in Nebraska, and 20,000 nationally, and 5,000 livestock sales representative jobs in Nebraska and 75,000 nationally. T15. Based on these figures, the ALJ found that there were sufficient jobs in the national economy. T15.

Whited first claims that 200 jobs for furniture consultants in Nebraska is not a reasonable number of jobs, because most of these jobs would exist in Omaha or Lincoln, which are more than 200 miles from Whited's home. He next argues that, contrary to the ALJ's findings, usher jobs simply do not exist in this day and age. Both arguments are without merit.

Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which the claimant is able to meet with his or her physical or mental abilities and vocational qualifications. 20 C.F.R. § 404.1566(b). The jobs must exist in significant numbers in either the region where the claimant lives or in several other regions of the country. § 404.1566(a). The lack of work in the claimant's local area will not support a finding of disability. § 404.1566(c). Therefore, whether jobs are available near Whited's residence is beside the point. That said, there must be more than "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region" where the claimant lives. § 404.1566(b). That standard has been satisfied in this case. The relevant question is not whether 200 furniture rental consultant jobs in the state of Nebraska are, standing alone, sufficient. Rather, the Court looks to the total number of jobs found to exist by the ALJ: 5,700 in Nebraska and 125,000 nationally. And these numbers exceed levels the Eighth Circuit has considered sufficient to constitute a "significant number." *See, Osborne v. Barnhart,* 316 F.3d 809, 812 (8th Cir. 2003); *Long v. Chater,* 108 F.3d 185, 188 (8th Cir. 1997); *Johnson v. Chater*,108 F.3d 178, 180 (8th Cir. 1997).

---

[5] Whited has *not* argued that he would be unable to perform these jobs as described in the DOT.

- 5 -

Whited's argument that usher positions simply do not exist is likewise without merit, as it is supported by nothing but allegations in Whited's brief. The ALJ was entitled to rely upon the testimony of the VE that usher jobs existed in the numbers stated, *Guilliams v. Barnhart*, 393 F.3d 798, 803–04 (8th Cir. 2005); 20 C.F.R. § 404.1566(d), and Whited's allegations to the contrary do not convince the Court the ALJ erred. *See Bavaro v. Astrue*, 413 Fed. Appx. 382, 384 (2d Cir. 2011) (ALJ properly relied upon VE testimony that sufficient jobs existed in the photofinishing industry, and court would not take notice of decline in that industry based on claimant's conclusory proclamations).

### III. Whited's Ability to Sit, Stand, and Walk

Whited's brief concludes by stating that the "level of claimant's limitations found by the ALJ in standing, sitting, walking as reflected by the record do not constitute substantial evidence justifying a denial of benefits." Filing 15 at 15. It is not clear if Whited has simply inserted this as concluding statement, or if he is raising a new argument not otherwise addressed in his brief. Whited appears to be arguing (in the most conclusory fashion) that the ALJ erred in her RFC determination. The record makes clear that Whited claimed greater limitations in standing, sitting, and walking than the ALJ found credible. So, liberally construed, Whited has implicitly raised two arguments: that the ALJ erred in discounting his testimony, and more broadly, that the RFC assessment was not supported by substantial evidence. The Court finds no merit in either argument.

Questions of credibility are for the ALJ in the first instance, and the Court defers to the ALJ's credibility findings where the ALJ expressly discredits a claimant's testimony and gives a good reason for doing so. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The ALJ found Whited's complaints of disabling pain less than credible, as well as his claimed inability to sit, stand, and walk for any significant amount of time. T11–13. This finding was based on several factors, including the fact that Whited was able to work 8 hours a day, once a week, at a livestock auction, from May 2008 to May 2009. T13, 195–96. The ALJ properly found that Whited's ability to work for approximately a year detracted from his credibility. *See Medhaug v. Astrue,* 578 F.3d 805, 816 (8th Cir. 2009); *Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006). This finding, in turn, factored into the ALJ's overall RFC assessment, *see Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005), which the Court likewise finds to have been supported by substantial evidence.

The ALJ relied upon the opinions of the state agency medical consultants, Jerry Reed, M.D., and Glen Knosp, M.D. T13, 308–17. Reed

- 6 -

opined that Whited was capable of working at the RFC found by the ALJ, and Knosp concurred. T308–17. While other doctors and treatment providers opined that Whited suffered from greater limitations, the ALJ adequately explained why she had discounted these opinions. T12–13. It is the ALJ's role to weigh conflicting evidence and to resolve disagreements among physicians, *Kirby v. Astrue,* 500 F.3d 705, 709 (8th Cir. 2007), and Whited does not claim that the ALJ erred in doing so. The RFC determination was also supported by Whited's ability to work at the livestock auction. T13–14. While this work was not itself sufficient to support an RFC to perform more strenuous work on a full-time basis, it was probative evidence that the ALJ was entitled to consider. *Harris v. Barnhart,* 356 F.3d 926, 930 (8th Cir. 2004). In sum, the Court finds that the ALJ's decision was supported by substantial evidence, including the ALJ's independent review of the medical evidence, the opinions of the state agency medical consultants, and Whited's activities, including his work at the livestock auction. *See Krogmeier v. Barnhart,* 294 F.3d 1019, 1023–24 (8th Cir. 2002).

### IV. Failure to Explain Findings

Finally, Whited argues that the ALJ did not adequately explain her findings, or in the parlance of Judge Posner, that the ALJ failed to build a "logical bridge" between the evidence and her conclusion. *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *see also Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011). In point of fact, Whited does not actually make this argument; instead, he simply quotes at great length from a Seventh Circuit case, *Bjornson v. Astrue,* 671 F.3d 640 (7th Cir. 2012). In *Bjornson*, the court faulted the ALJ for failing to explain why she had rejected the claimant's testimony concerning her symptoms. 671 F.3d at 644–49. Here, it is Whited that has failed to build a logical bridge: between his lengthy quote from *Bjornson* and his own case. Whited offers no suggestions as to *how* the ALJ erred in this case. And as the Court explained above, the ALJ offered sufficient reasoning for her RFC determination and discounting Whited's testimony.

### CONCLUSION

The Court has reviewed the administrative record and finds that the ALJ did not err in any of the ways asserted by Whited. The Court therefore concludes that the Commissioner's decision was supported by substantial evidence and should be affirmed.

IT IS ORDERED:

1. The Commissioner's decision is affirmed.

2. Whited's complaint is dismissed.

3. The parties shall bear their own costs.

4. A separate judgment will be entered.

Dated this 26th day of July, 2013.

                        BY THE COURT:

                        John M. Gerrard
                        United States District Judge